21-6097. I think it's Tryon v. Quick. Counsel for Appellant, make your appearance and proceed, please. May it please the Court, my name is Callie Heller, and I represent the Appellant, Mr. Isaiah Tryon. Your Honor, it is based on trial and appellate counsel's ineffectiveness, Mr. Tryon's penalty phase in capital appeal, but without crucial mitigating evidence and evidence to rebut the State's acquisition. This Court has called the penalty phase the most critical phase of a capital case. In this case, with overwhelming evidence of guilt, reasonable penalty phase performance was especially crucial. Even if superficially reasonable, counsel's mitigation presentation here did not meet the constitutional standard. The Oklahoma Court of Criminal Appeals reviewed the merits of Mr. Tryon's ineffective assistance of trial counsel claims to determine whether post-conviction counsel ineffectively omitted them. This merits adjudication relied on unreasonable determinations of facts and applications of law. As a result, we ask that you reverse the district court's decision. Let me ask you this. The difference that I see is that the post-conviction counsel obligation of performance is based on an Oklahoma statute. It's not a constitutional right. How does that affect your argument with respect to AEDPA and post-conviction performance? I don't believe that it does affect our argument, Your Honor. We are not asking this court to review the merits of post-conviction counsel's performance, but rather focus treatment of the underlying claim that post-conviction counsel omitted here, which was Mr. Tryon's ineffective assistance of trial counsel claims. So I would square focus treatment of that in this case with what was before this court in Goofy Carpenter. And I believe this is a reckoning on point with that, where this court found that over-reviewed the substantive claims to determine whether the procedural bar had been overcome. And there, because trial counsel, the underlying claim was without merit, therefore post-conviction counsel was not ineffective in omitting it. And this court found that we do not need to concern ourselves with whether that procedural bar binds us and went on to look at the merits of, well, rather, whether this decision was reasonable under 2254D. I see two fundamental problems with that argument as it relates to good. First, in good, the court was determining whether the bar should be applied. That's not what we have here. The OCCA applied the bar. It then went on to decide whether post-conviction counsel was ineffective as a matter of statute. And so I don't see how good it helps you, because the question there was, do I apply the bar or not, and therefore I look at the merits of the underlying claim. Well, the OCCA is not looking at the merits of the underlying claim to decide whether the bar should be applied, and therefore it has adjudicated those claims. I'll stop there and then go with my second concern. How do you respond to that? Well, regarding that first concern, I believe respectfully that this actually is a duplicate of what happened in good. OCCA there, in a subsequent post-conviction action, was looking at the omitted ineffective assistance of trial counsel claim to determine whether post-conviction counsel ineffectively did not include that claim in OCCA. There was a cause and prejudice issue at play. Have you made a cause and prejudice argument on appeal, not before the district court, to us? I didn't see anything in your brief to that effect. We have not, Your Honor. Okay. Well, if you have not, then the question of whether there is a procedural bar is not on the table here. And if that is true, then I don't understand in good the court was determining whether to apply the procedural bar. Here, that's not on the table. The procedural bar sticks. And in the second post-conviction matter, the Oklahoma Court of Criminal Appeals said there's the procedural bar on ineffective assistance of trial and appellate counsel. Now, let me look at this statutory matter. So, yes, I see. So how are those mirror images of each other? It seems to me that's fundamentally different. It is my contention that both here and in good that OCCA decided, yes, those underlying matters, we cannot look at the ineffective assistance of appellate counsel. Regarding the ineffective assistance of post-conviction counsel, this was the first opportunity to bring it. So we are squarely addressing that. No, you're not. You're not. We're not talking about ineffective assistance of post-conviction counsel. That's a statutory matter, and you can't do anything with that. So the whole question, is it not, is whether there was in the second post-conviction opinion an adjudication of the merits of trial and appellate counsel ineffectiveness? That's the question, right? Yes, Your Honor. Well, if in that second post-conviction opinion, OCCA said those claims are barred, then where is the predicate for an adjudication of the merits of those claims? Well, in that case, in this case, to determine whether, in effect, and I realize we are not now discussing post-conviction counsel's performance, but OCCA looked at whether the underlying claim had merit, and then it went on over the course of eight pages to look very deeply at the merit of that, explicitly as it related to the trial, and said, we are looking at whether this omitted evidence would have impacted the jury's decision. Let me ask you this. Does it matter that the application of Strickland and the ineffective assistance rubric was done by the OCCA only as a function of state law? In other words, the state law required the application of Strickland to buy in the second post-conviction proceeding. Does that matter? I don't believe that here it does, and I think we have to look at each OCA opinion as we get it. So if we had an opinion before us where OCA had a very summary decision and said post-conviction counsel was not effective because the omitted claim had no merit, I think we'd be in a different situation right now. But here, because they went on to apply Strickland, the constitutional standard of Strickland II, the underlying claim, I don't think it changes the analysis now, but that was only in the course of determining whether post-conviction counsel as a statutory matter ineffectively omitted that because we're not now looking at that performance of post-conviction counsel. Let me, I want to look at your request to expand the COA to include an Adkins claim. And one of the things that you argue is that trial counsel did not make an argument that the statute was unconstitutional. But my review of the record shows that trial counsel did indeed file a motion challenging the constitutionality of the statute and that the trial court ruled on that issue. So it feels as if part of your argument is based on an inaccurate premise, based on the record. I mean, there was definitely an argument that the statute is unconstitutional. Yes, I apologize, Your Honor, I don't have that claim as much in my mind for today. But yes, I believe there was that argument made, but I believe the argument was not made effectively, if I recall, by a trial counsel. Okay, so are you abandoning then the argument to expand the COA to include an Adkins claim? We are not. Okay, all right. Well, would you concede that Oklahoma has upheld the constitutionality of the statute and the Tenth Circuit has also recognized it as being constitutional? That has been recognized. And so where the Supreme Court, I mean, we don't have a definitive statement from the Supreme Court that it's unconstitutional, do we? As far as the Oklahoma statute, no, we do not. But I would just briefly contend that because that area is so reliant on clinical guidelines which are not static and which are fluid, I don't believe that some of the decisions in this court necessarily can govern that going forward because clinical guidelines continue to change, such as with the Flynn effect, I believe. Well, there's never, the Supreme Court's never said that you have to apply the Flynn effect, has it? It has not, no. And both Oklahoma and the Tenth Circuit have said just the opposite? Correct, Your Honor. So in an AEDPA situation like this, it's a pretty steep climb when you don't have anything to suggest that the OCCA's decision was contrary to Supreme Court law. Yes, I think that still under DQ, it can still be an unreasonable determination of the facts, even if not unreasonably applying Supreme Court law, such as here where the, I believe it was the highest of Mr. Triumph's pretrial IQ scores was not only unreliable due to the Flynn effect, but also because even at the time it was administered, it was based on an outdated test. Did you make the D2, the fact argument, is that preserved? I believe it is. As such, as a D2 argument? I believe it is. I believe in our COA motion, at least there, it was preserved. All right. On the Atkins point, and really on all the points, I run into one problem that maybe you can help me with, which is, I think for the Atkins claim, as well as so many of the other claims, there's adjudication on the merits by the OCCA, right? And that being the case, we're under 2254 D1, and that being the case, we're under the all fair-minded jurist must find the OCA's decision unreasonable. And in the government's brief, in the federal district court's opinion, there are multiple references to that standard. And in your briefing, there is only one mention of the word fair-minded, let alone coming to terms with that and explaining to the court, here, it's a difficult standard, but here's how we make it. It seems to me that you just ignore the standard. Could you comment on that? I believe, Your Honor, that we focused on addressing the unreasonableness of OCA's merits adjudication, so I believe we did recognize that we are squarely under Edna, we're under 2254 D, and this is a hard burden to meet, but deference does not mean we cannot meet it, and that we focused on how these decisions were unreasonable, such that we could still obtain merits review. I don't remember anything that says all fair-minded jurists would find OCA unreasonable on prejudice, on whatever issue, on Atkins, for this reason, because it's such a difficult standard, I'd like an explanation, and maybe you can do that during your argument. An explanation of how we do that. Why all fair-minded jurists would say that it was not only mistaken, but unreasonable. Yes, and to be clear, Your Honor, I'm sorry, that refers not just to the Atkins decision. It's across the board. Yes. And that's the missing piece, and it's, of course, the key piece, it's the center of the puzzle, and silence, as I can tell. Right, so, Your Honor, here OCA's merits adjudication was an unreasonable determination, reliant on unreasonable determination of facts, and also unreasonably applied the governing law. So I'll speak first to the omission of the neurological evidence. So here, even though there was some neuropsychological evidence presented at Mr. Tryon's trial, counsel did not meet the Strickland standard where a reasonable decision has to be premised on particular investigations that make that decision reasonable. But the, I mean, the ruling was that, because you brought it in your first post-conviction motion, but at that time you didn't have any neuroimaging evidence, so the ruling was that you couldn't meet the prejudice prong. I mean, that's correct, isn't it? You've got to come in and you've got to show that the brain scans would have shown something that wasn't brought out during trial. Right, so regarding OCA's initial post-conviction decision, that is correct. There was no prejudice showing made to OCA, but Mr. Tryon still argued in his previous petition that this was nonetheless unreasonable because OCA did not show how the hearing to determine what the evidence could have shown. Well, I mean, you have to come forward with the evidence, and you didn't. And, you know, I didn't see an ACCI argument on the failure to fund in here, so we're looking at a situation where by the time you brought the evidence in your second post-conviction motion, it was procedurally barred because it should have been brought in the first one. So regarding that first post-conviction proceeding, yes, the evidence should have been brought there, but there is precedent from the Fourth Circuit, from the Ninth Circuit, that a decision that relies on deficient fact-finding procedures or no fact-finding procedures as here can be found unreasonable under D2 or removes it from the realm of a merits adjudication altogether. I know this court in Smith v. Aldridge grapples with that question, and this court's language there finding that we cannot always say that a state court was unreasonable for failing to hold an interventionary hearing because in many, in most cases, that's not unreasonable because that would simply replicate the evidence put before the state court in asking for a hearing or evidence put before the state court. But here we have a decision that was unlike that. We have a decision where a premise did in the first post-conviction solely on the lack of evidence. So this court's language in Smith v. Aldridge, I think, was that that was not a case where no reasonable court could find that the state court had to hold a hearing in order to deny the claim. Maybe I'm not following, but holding the hearing wouldn't solve the problem, and I thought the problem was that there wasn't funding. So the court holds a hearing and there's still no funding. There's no evidence. It was a waste of time, the hearing. I believe, Your Honor, that where a hearing is granted before OCA, there are provisions to at least request funding. So here, funding was only denied internally within both at this trial level and at the post-conviction level. Is the deficient performance failing to seek the money or failing to obtain the money? It is failing to seek the money, Your Honor. But that's not the claim you brought. Well, we brought that claim, I believe. I mean, I would expect to see a cite to ACCI, but there isn't. Let me, while we're on brain imaging, let me ask you about the fetal alcohol syndrome. In the trial court, these were two separate arguments. And frankly, in the first post-conviction motion, there is no argument for fetal alcohol syndrome. And now, suddenly, we're weaving them together and presenting us to this court. But it seems to me that we can't do it that way. We've got to, what I always refer to as procedural archaeology under AEDPA. The fetal alcohol syndrome claim is procedurally barred. And in fact, that's what the OCCA decided, right? So our argument here does rely on OCA's second post-conviction decision there. And this is where OCA, across eight pages, looked at the merits of that FASB claim and looked at that claim as one category of mitigation that would have been supported by the omitted brain scans and compared it to the evidence presented at trial to determine this is no different than the evidence presented at trial from Dr. Fabian. Therefore, this would not have been supported. And that was in the context of the OCCA considering a statutory claim for post-conviction counsel's deficiency in effectiveness. We don't have that here because it's not a constitutional claim. So we can't review that. And so we're stuck with the typical rules of AEDPA. And you've got a claim that's procedurally barred because it wasn't raised in the first post-conviction motion. And I don't think you can suddenly attach it to a claim that's not procedurally barred and somehow make it somehow have that be your cause and prejudice to get over the procedural bar. And I don't see any argument on cause and prejudice. No argument has been made before this court on that. On this evidentiary hearing idea, I'm sort of struggling to understand the logic of that. As I understand your position in the first post-conviction proceeding, the OCCA should have inquired or granted the evidentiary hearing to provide the basis for getting this brain imaging evidence. Is that right? Well, I'm not familiar with the precedent that would support the notion that an evidentiary hearing is a fishing expedition. I mean, the reality is that in most evidentiary hearings, is it not the case that you make a showing via an affidavit or via some sort of evidence to say, give me a hearing so that we can flesh out the facts to support X? Well, that predicate for an evidentiary hearing is not here. You don't just throw stuff up there and say, Your Honor, let's have an evidentiary hearing to see if it pans out. Right? That is correct, Your Honor. I think here, because of the first post-conviction application, it was put before OCCA that there's no brain scan because there is no internal funding within the state post-conviction defender. And I think that this is a case more towards the analogous cases from the Fourth and Ninth Circuit and towards the discussion in Smith v. Aldridge where generally that is correct, but I think there are certain cases based on that precedent where it nonetheless is unreasonable for the state court to have denied development of a claim and then denied a claim due to that lack of development. For the state court to have denied development of the claim, and by denied development of the claim, you mean not allow for an evidentiary hearing? Correct, where funding could have been obtained, a brain scan could have been obtained, and then factual findings could be made based on the evidence. Well, I mean, the whole question comes down to one of showing, right? I mean, and even if there had not been brain imaging, which the OCCA looked to, the absence thereof, what other showing beyond sort of basic allegations that there would be harm did you make on first post-conviction? That is right, that was the basic showing that there would be harm, but I think that's the premise of some of these decisions that say these kinds of, this kind of decision-making from state courts are not decisions that we can defer to under ECFA because they're so lacking in fact planning and development. And in the Tenth Circuit, your best case to support this line of reasoning is the Smith v. Aldridge case, is that right? That is the best case I know of, Your Honor. Okay. For the next few minutes, I might move on to the jail fight claim. So let me break that out first on your expert witness on prison life and violence in prison. I mean, that's both procedurally barred and unexhausted, isn't it? It was never made before the state court. That's right, Your Honor. And I believe they did that just as an example of strategies that competent trial counsel could have in the case where the state is presenting evidence. Okay, but that's not properly before us, right? That is not the crux of our case, Your Honor. Even without that mention, I believe here that the central part of that claim is that counsel had rebuttal evidence that they could have used, failed to present it, and therefore one of two jail fights, which this court has recognized as the most damaging, most important aggravating circumstance, was left unrebutted even though there was evidence that Mr. Trial was defending himself and did not instigate that fight. The OCCA determined that even if you could show deficient performance, that it would fail on the second prong of Strickland because there was overwhelming evidence of Mr. Trion's violent conduct, including a video of a different jail fight that I watched, probably the panel did, and the jury watched where he seems to be the aggressor in that one. How do you respond to no harm, no foul? I think the way that OCCA addressed that is an unreasonable application of Strickland and its progeny because that was resolving the claim solely by reference to that evidence. So I think we're here and this court has said that this is the most damaging circumstance to not present evidence that would have removed half of that circumstance from the jury's purview. I don't think we can say that the single-needed juror could not have found that Mr. Trion, that a life imprisonment without parole sentence could sufficiently protect the prison society from Mr. Trion with only one fight to consider, which I think it's reasonable to say a single-needed juror could have found that to be a one-off incident versus now we have a pattern of multiple fights. How do you get to a single juror when we're talking about the AEDPA standard? You're talking Wiggins, which isn't an AEDPA case. I don't think we do the single-juror issue. Well, here OCCA, by proceeding only by reference to the abomination evidence, did not apply the weighting standard that was needed whatsoever. That would have to apply based on Wiggins. Aren't you really arguing to us as though it's de novo? I still haven't seen you encounter the all-fair-minded jurist would say what OCCA said was unreasonable because certainly OCCA had its reasons. There were multiple continuing threat factors, and this was just a small part. And so why would all-fair-minded jurists say, considering the collection of evidence that was before the jury, that OCCA was not only mistaken, its action was unreasonable? I think, Your Honor, all-fair-minded jurists would say that because OCCA did not reasonably apply Strickland and its progeny, even recently such as Andrews v. Texas, which really emphasized that you can't just look at the abomination evidence in the bathroom. You have to weigh it against the full body of mitigating evidence. You have to do a totalitarian analysis. And how do we know that the OCCA didn't do that? I mean, in your reply brief, you say, well, the only evidence we need is to look at the opinion. Well, what case do you have that says that silence should be read as affirmative negation of or disclaiming of? I mean, when we are applying a presumption that the state court knows the law and applies the law, if it says nothing and rules, generally we presume it did what it was supposed to do, right? That's right, Your Honor. I think it is telling here, though, that in reviewing OCCA's decisions, the district court has to substitute its own reference and its own analysis to weighing the mitigation evidence against the abomination evidence. No, it isn't. I mean, Harrison v. Richter says that we're supposed to look for theories that would support the state court decision. Well, that's a theory to support the state court decision. I mean, silence, and let me make sure I understand your position. Silence is not enough, is it, to overcome the presumption? It is not, Your Honor. I believe that that standard refers to an unreasoned state court decision, which we don't have here. We have OCA making clear that because we have all of this aggravating evidence, no fair-minded jurist could have found differently, and that is not a reasonable application of OCCA. Well, if the OCCA looked at the aggravating evidence, understood, if we presume it understands the standard, then we presume that it looked at the mitigating evidence, too, which it was clearly aware of per the direct appeal decision in which it was laid out in great detail. And so what I'm trying to get at is I just don't understand why we should presume error, which is essentially what it comes down to, from the fact that it didn't say mitigating evidence. I don't know that we are saying just because it didn't say mitigation evidence, but I think OCA made it clear here that its decision purely relied on the aggravation evidence and did not do a weighing analysis. I would like to reserve my remaining minute for rebuttal unless there are further questions. Yes, of course. Thank you. If you can, tack on two for Ms. Crabb, and then I'm going to give her two in rebuttal when the time comes to additional. Okay. Thirty-two. That's exactly right. You don't have to take it, but you have it. Go ahead. Thank you, Your Honor. May it please the Court. My name is Jennifer Crabb, and I represent the APA League. I wanted to start by correcting a mistake in my brief. On page 43, I have said that trial counsel's investigation included neuroimaging, which is the gold standard, and that should have said neuropsychological testing, and I apologize for that mistake. Okay. Petitioner admits today, and admitted in his reply brief, that the only way that he might be entitled to relief on Proposition 1 is by considering the fetal alcohol syndrome evidence that was not presented in the Court of Criminal Appeals until the second post-conviction application, and that also was not presented in the district court as a part of the neuroimaging claim. And for that reason, Petitioner does not have a certificate of appealability on the claim he raises here. Well, I'm not sure. I looked at that pretty carefully because the way the certificate of appealability was granted was in response to what was briefed, and that briefing weaved them together. So I look at it as we have jurisdiction over it because it does look like a COA was granted on the package of the two combined, but for purposes of analysis, you've got to break them out because one is procedurally barred and the other isn't. And I respectfully disagree, Your Honor, and I'll explain why. In the motion for COA, yes, they were combined, and that was Ground 1A of the motion for COA, but in the district court, the neuroimaging claim was Ground 1G, and the fetal alcohol syndrome was Ground 2, and when Judge Murphy granted the certificate of appealability, he specified that it was for Ground 1G. And so for that reason, I don't believe that the certificate of appealability does include Ground 2 of the habeas petition. And Judge Murphy was aware of the district court briefing? Is that what you're saying? Yes. Yes, I'm sorry. He requires us, when we do our COA briefing, to use the numbering as it was in the district court. All right. And so Petitioner points to both Goode and Smith on this certificate of appealability issue, but in both of those cases, in Goode, the certificate was issued on, quote, Ground 1, ineffective assistance of counsel, which had included eight subgrounds, and it did not specify any of the subgrounds in the Goode COA. And the same is true in Smith, where Ground 4 was a combination of two ineffective assistance claims, and the court granted a COA on, quote, Ground 4-IAC in the penalty phase. And so once again, the certificate of appealability in that case did not specify a subground, whereas here, as I stated before, Judge Murphy did specifically single out Ground 1-G. Moving on to procedural default, Petitioner relies on Goode and Smith again to argue that this court can consider both claims together. What happened in Goode is that in his first post-conviction application, he claimed that, among many other things, that trial counsel wasn't effective for not presenting sexual abuse and substance abuse mitigation. In his third post-conviction application, he raised that same claim again, but he added mental health evidence to it. The Court of Criminal Appeals decided the first claim, substance abuse and sexual abuse, procedurally defaulted the mental health part, and the district court did the same. And when it came to this court, this court stated only that you need not decide whether the bar binds you. And so that does not mean that this court could have granted relief on the procedurally defaulted claim without deciding whether the bar bound this court. Rather, there's abundant authority that says that this court can overlook procedural issues and deny relief. However, with a procedurally defaulted claim, Petitioner is going to have to either show cause and prejudice or that the bar is not adequate or independent in order to have that review on the merits. Similarly, in Smith, as I said earlier in Hagee's petition, two interdictive assistance subgrounds were combined. And then what this court said is that, although presented as a single claim—oh, I'm so sorry, that's Petitioner. Petitioner says, although presented as a single claim, Mr. Smith's argument challenges two separate rulings by the Court of Criminal Appeals. The court again went on to address the evidence and arguments from both post-conviction proceedings in turn. And Petitioner is exactly correct because what this court did in Smith when it was faced with a combined claim like here is it decided the two subclaims in turn. It decided the first one as an entirely separate matter and then went on with a different subheading and decided the second subclaim. And so this court did not do what Petitioner is urging it to do here, and that is combine two claims that were separate below. One of the issues that is significant in resolving the first area of ineffective assistance of counsel related to the neuroimaging, as you called it in your briefing, is the notion that, as I understand, Mr. Tryon, he argues that in the second post-conviction proceeding, although the court was adjudicating the question of post-conviction counsel's ineffectiveness, in order to do that, it looked at and opined on the ineffectiveness of trial and appellate counsel. And by virtue of doing that, as it sees it, analogous to good, by virtue of doing that, it in fact eliminated the procedural bar to us looking at trial and appellate counsel's ineffectiveness in this case. What is your response to the fact that, in fact, in determining whether post-conviction counsel was ineffective, there is a good bit of ink spilled at looking at what trial and appellate counsel did and whether what they did was ineffective. Does that allow us now to reach those issues? It does not, Your Honor, because they also clearly and expressly applied a procedural default to the trial and appellate counsel claims. And under Coleman v. Thompson, this court cannot grant relief on procedurally defaulted claims. Under footnote 10 of Harris v. Reed, a state court need not worry about making an alternative merits analysis and thereby losing its bar. In Thacker v. Workman, this court said that we must acknowledge and apply the OCCA's procedural bar ruling, even though the court, on an alternative basis, briefly addressed the merits of the claim. And so the fact that the Court of Appeals looked at those claims as a matter of statutory law, yes, applying strictly, but as a question of whether post-conviction counsel was statutorily ineffective, does not in any way permit this court to overlook the procedural default of, as we know, post-conviction counsel cannot establish cause, at least out of Oklahoma. And moreover, if you look at Title 22, Section 1089 of the Oklahoma Statutes, where it talks about subsequent post-conviction applications, it nowhere indicates that a petitioner can establish cause and thereby have the bar overlooked. The same is true of Court of Criminal Appeals Rule 9.7. And further, the Court of Criminal Appeals opinion in this case, in the second post-conviction application, gives absolutely no indication that were the court to find post-conviction counsel ineffective, the underlying claims would no longer be barred. Let me ask you about the brain scan issue. You have almost a catch-22. I mean, the defendant goes in and says, I need funding so that I can do some neuroimaging, some brain scans, in order to prove my counsel was ineffective in not getting it by the time of trial. And funding is denied. Then they file the post-conviction, and the OCCA says, well, you may have deficient performance, but you can't show prejudice because you don't have any brain scans that show that you actually had some physical deformities in your brain. I mean, isn't that a bit problematic in terms of fairness to the defendant? There are two reasons that I would say it does not, Your Honor. The first is that trial counsel never asked the trial court for funding. They explicitly acknowledged on the record in a hearing held on July 10th of 2014 that they had that right to go to the district court for funding. And what they told the trial court was, we're doing some research, we're going to go back to our boss, and we're going to try again to get this funding. And if that doesn't work, then we will file a motion to have funding from the court funds. And the court gave them until September 11th to file that motion. That motion was never filed. And so while there was an internal denial of funding, there was another avenue that counsel failed to pursue, and we have to presume, and I can discuss it more, but that was for strategic reasons. The second reason is that there is no right to post-conviction. There's no constitutional right to post-conviction proceedings, and I am not aware of any constitutional or statutory right to funding in post-conviction proceedings. And so the fact that Petitioner did not have the funding to make that showing on post-conviction does not implicate any constitutional right. Can you explore the strategy part a little deeper? Yes. So counsel had the neuropsychological testing, which very clearly stated that the petition had brain damage. In fact, what Dr. Fabian, one of the mitigating factors was, and I'm looking for the exact words, I apologize, but that he has brain damage. And so what counsel decided to do, they had a very, as the Supreme Court described it in Dunn v. Reed, they had a very holistic mitigation piece. They presented evidence about his childhood and a family who loves him, and then they presented brain damage evidence. And so they could reasonably decide that in spite of what Judge Fabian, excuse me, Dr. Fabian initially stated that he recommended neuroimaging, they could reasonably decide that that wasn't necessary and in fact that it could be a risk because as the supporters recognized, the speculative witness is a double-edged sword. What if they had gotten that neuroimaging and it had come back normal? And so particularly when you use both layers of deference, that under Strickland and that under AEDPA, then there's no, all fair-minded jurists would not agree that trial counsel was ineffective. Of course, that claim wasn't even properly before this court, but where it worked. So holistically, with the holistic situation as it was, you're saying it wouldn't even be deficient performance had counsel chosen not to seek the money for the brain scan? Yes, that's correct. And Dr. Fabian said there was brain damage though, right? He did. Okay, but you're saying that getting the actual imaging could have been a risk because you didn't know whether it would validate his opinion. That's correct. And Dr. Fabian also said that he was not intellectually disabled, right? Yes. Okay, but I thought that your strategy extended to the notion of post-conviction counsel not seeking brain imaging to make the case as to the ineffectiveness of trial and appellate counsel. Is that not right? No, I apologize, Your Honor. I merely said that there's no constitutional or statutory right to that funding. I assume that post-conviction counsel didn't make a strategic decision, having chosen to put that footnote in the brief saying that funding was denied. However, that doesn't implicate the United States Constitution. Okay, so your argument there against any sort of fairness or inequity was simply there was no constitutional right to it to begin with. Correct. Okay, let me clarify one point. In going to the 2009 fight situation, in your brief, page 55, you say that Mr. Tryon did not contend that trial and appellate counsel failed to conduct a reasonable investigation and there was no suggestion that trial and appellate counsel should have discovered any evidence beyond the report. Now, in the reply brief, Mr. Tryon doesn't necessarily directly attack that, except to say that the report should have been the jumping off for any reasonable trial performance. And so I guess my question is, the implication of that is he doesn't agree that he didn't challenge it below. Where should we look to validate the notion that there was no effort to say that trial or appellate trial counsel should have done more than have the report? That would be beginning of page 18 of the first post-conviction application. Not once does petitioner say in that section that counsel should have gone further other than using the disciplinary report to either get the evidence excluded or to rebut it. Okay, thank you. Yes. Because evidentiary hearings were discussed, I would point out that Rule 9.7 D.5 of the Court of Criminal Appeals rules does in fact require affidavits. It says that three times, that the post-conviction petitioner must present affidavits. And while it's somewhat distinct in Boyle v. McHugh when dealing with the question of diligence, this court held that the question is whether the petitioner could reasonably believe that he was complying with state law. And by simply telling the Court of Criminal Appeals that I might be able to show prejudice on this, that would not suffice under Rule 9.7. Okay, so in this, I want to tease that out a little bit. I mean, so you would argue that under 9.7, it would not be sufficient to provide a predicate for an evidentiary hearing to say that there is X problem, there is harm, Your Honor. I mean, an averment from a pleading that there is harm. There would need to be, and now let's get the evidence to support that in the context of an evidentiary hearing. Your position would be that state law does not, would require some sort of, I mean evidentiary showing through affidavits to provide the predicate for that hearing. That's correct, Your Honor. Okay. What sort of affidavits would suffice here? I suppose, because for the neuroimaging claim, I suppose it would be difficult to make that showing without, with an affidavit and without actual neuroimaging. I suppose it's possible perhaps to gather updates from a number of experts saying that based on his history and head injuries and things like that, there's a very high probability that he would have. But I suspect that short of a brain scan, that he probably could not have gotten an evidentiary hearing on this claim. Thank you. I'm happy to take any more questions. What about the effort, the motion to expand the COA? The government didn't file a response, right? No, Your Honor, we did not. And what do we do with that? You look at it, DeNovo, to see whether it satisfies the standard or certificate of appealability. And I say DeNovo, but the certificate of appealability standard does include Section 2254D. And so as regards the intellectual disability claim, petitioner had an IQ score at the age of 14 of 81. And so that would put this case squarely within the Michael Smith case, where not only is the statute not unconstitutional, but petitioner is not considered intellectually disabled. And so petitioner has not made a substantial showing of the denial of a constitutional right with that claim. I guess even if they could show the statute was unconstitutional, you still had the problem that his own expert testified repeatedly that he was not intellectually disabled. That is true, Your Honor, yes. I believe Dr. Fabian thinks that he functions at an intellectually disabled capacity as an adult, but there's insufficient evidence to show that that occurred before the age of 18. And what do you do with the fact that Dr. Fabian has apparently reconsidered his assessment and filed a supplemental report saying that, in fact, Mr. Tryon is intellectually disabled? So it's subtle, but that report actually does not find him intellectually disabled. It says that he functions at that level. His IQ is at the level now. His adaptive functioning is. But if you look at the discussion on the third prong that the condition manifests before the age of 18, he does not find that satisfying. On the argument that the OCCA unreasonably applied the Strickland prejudice standard in terms of not weighing the mitigating evidence, how would you distinguish the Supreme Court's decision in Williams v. Taylor on the question of whether there was error there? Because, as Your Honor pointed out, there are a number of Supreme Court cases that say that we presume that state courts know and follow the law. There are also cases from both the Supreme Court and this court saying that this court does not scrutinize the Court of Criminal Appeals' decisions looking for error, that the question is whether, as a whole, the decision is reasonable. And in this case, the finding of no prejudice is reasonable for two reasons. The first is that petitioner's claim was actually that counsel should have rebutted the continuing threat aggravating circumstance. And so the first finding by the Court of Criminal Appeals was that he had failed to show that if this jail fight, this 2009 jail fight, wasn't included, that the jury wouldn't have found continuing threat. And they couldn't stop there because that was petitioner's argument. They then went on and said that there's no reasonable probability that the jury would have chosen a sentence of less than death. And because the Supreme Court does require that the omitted and the new mitigation be considered in any ineffective assistance claim, we need to presume that the Court of Criminal Appeals did that. And, in fact, and I apologize because this case is not in my brief, I will be happy to file a PHA. But in the Malone case, Malone v. State, it's 168 Pacific 3rd, 185, the Court of Criminal Appeals said that in making the determination of whether counsel's ineffective for not presenting mitigating evidence, quote, the newly proffered mitigating evidence must be considered along with the mitigating evidence that was presented and then weighed against the aggravating evidence that was presented. And if I understand what you just said, you're saying that because they decided first that the counsel didn't act deficiently in the first place, that we don't have to even get to the prejudice point? Is that what you're saying? No, I'm sorry, Your Honor. I'm saying that there were two facets to the Court of Criminal Appeals' no prejudice finding. Oh, okay. The first was simply that Petitioner had not shown a reasonable probability that without the 2009 jail fight, the jury would not have found a continuing threat. Okay. And that was, in fact, the argument that he put before the Court, and so they couldn't stop there without doing away. Because the OCCA opinion, as I look at it, focused on the admissibility of the investigative report about the fight, which isn't really the issue. The issue is whether you somehow bring out before the jury that he was exonerated, that he did not start that fight, and that he was blindsided and defending himself. And so whether or not the report itself was admissible, there were other ways to bring out that evidence, weren't there? Petitioner did not offer the Court of Criminal Appeals any other ways. Again, going back to 9.7, he did not attach affidavits from the officers. And he didn't explain how, given that Officer Hart appears to have not known about this disciplinary report at all, how it would have been proper to impeach him with that disciplinary report. And so I do think that that is a proper consideration. However, when it got to prejudice, the Court of Criminal Appeals then considered all of the aggravated evidence. I'm struggling to understand fully your response in the sense of you're saying the prejudice analysis of the OCCA had two parts. One being this notion that the argument that the counsel should have rebutted the 2009 jailhouse fight. OCCA says that even if, that there would have been other evidence that would have supported the continuing threat. So even if he had rebutted it, right, that there's no basis to believe that the jury would not have found death. Well, how is that separate from the need to engage in an evaluation of what would have remained absent the jailhouse fight? So they didn't say that the jury would have still found death. They said that the jury would have still found the continuing threat aggravating circumstance. There is no reasonable probability either that the jury would not have found the existence of the continuing threat aggravator or chosen a sentence less than death. And so the way I understand that is that petitioner's argument was that counsel should have rebutted the continuing threat aggravator. And the court of appeals said they could have tried, but even if they had gotten this 2009 jail fight excluded, the jury, there's no reasonable probability that jury would not have found this aggravating circumstance. But in doing that reasonable probability determination, would the law have required them to look at the other factors that would weigh on the existence of that continuing threat aggravator? Yes. Okay. And by other factors, I mean mitigating factors. No, I don't believe so, Your Honor, because there's two separate questions. That's what I want to understand. What are the two separate questions here? The jury is going to have to first find that an aggravator was proven beyond a reasonable doubt. Yes. And then they're going to do the weight. And in my view, the first portion of that sentence goes to the jury's finding of the aggravator beyond a reasonable doubt. And that is what I read petitioner to have been arguing in that post-conviction application, that counsel could have rebutted the continuing threat aggravator and not have that found. And then the second part of its opinion does, in fact, do the weighting. Okay. And so would the second part of the opinion or the analysis be that even if there were a continuing threat aggravator that did not include the 2009 fight, there would have been a weighing of mitigating and the existence of the aggravating factors and the jury would have still found death? Correct. Okay. And that's not expressed in their opinion, but your position is that we assume they followed the law. Correct. Yes. If there are no further questions, I would ask that you please affirm the district court's ruling. Okay. Thank you, counsel. Thank you. Your Honors, I would like to address the discussion that was had regarding counsel's strategic decision to not seek funding from the trial court for neuroimaging. I believe squarely based on the ADA guidelines, which we look to as guides that determine whether counsel's performance was reasonable, counsel must request needed funding from the trial court. What if there's a downside, as there was here? Who knew what the test would result in? I think in this case, though, Your Honor, the particular circumstances, we do not have evidence that this was a holistic decision to instead go with simply the bad results that we had. Dr. Fabian's initial post-conviction affidavit stated that he and trial counsel did not have the needed funding and resources and time to fully develop any type of brain damage testimony. So the damage of not having neuroimaging to corroborate his testing results, which the prosecution brought out to a very damaging effect, stating that Dr. Fabian did not have any type of objective evidence to show the damage was actually there. But then in response to that, the witness says, because there wasn't any funding. And I picture 12 faces in the jury box who are unimpressed that the defendant is potentially facing death and didn't get money. In other words, it was teed up pretty nicely for the jury, wasn't it? And if you disagree with that, it's still not unreasonable to think that it was. I think, Your Honor, that counsel, a reasonable strategic decision might have been to request the funding and then perhaps decide we don't need this in our case. But the circumstances of this case show that it was needed. There were ample references to Mr. Tryon lingering, not putting forth full effort, whether he even did have brain damage because it was controverted that his mother had used prenatal drugs while Mr. Tryon was in the room. So I think the weight of the evidence here, there were so many issues with the credibility of Dr. Fabian's findings, but not being able to corroborate it with objective neuroimaging left it completely in shambles. So I don't think this was a strategic decision. Wasn't the focus of the theory in the trial court, though, the determination of whether Mr. Tryon was intellectually disabled? But I'm talking about related to brain issues. I mean, I thought that the question was whether he's intellectually disabled or not. Of course, there was evidence about his mother's prenatal drug usage and all that. Don't worry about that. But I'm just trying to understand the downside risk, it seems to me, would have been that Dr. Fabian already said that he wasn't intellectually disabled, right? And so wouldn't that brain analysis, what would that have said about that? So, Your Honor, just to speak first to that Dr. Fabian said Mr. Tryon was not intellectually disabled, that only happened on the stand. So Dr. Fabian— Oh, I'm sorry. That matters, doesn't it? It does, but I believe that is not evidence of a strategic decision because Dr. Fabian had not performed adaptive deficits testing. That was something else he said he did not have funding to do. So his statement that Mr. Tryon was not intellectually disabled was not the result of strategic decision-making. And further, I would point out that his testimony was not narrowly intended to be about that area. So regarding Mr. Tryon's drug use, head injuries, trauma exposure, he testified that this had all come together to cause Mr. Tryon brain damage. Go ahead. I just want to see if you agree with the facts that were set out by Ms. Crabb about that the district court gave a deadline of September 11th to file a motion with the trial court to get funding directly from the trial court for brain scans. And a motion was never filed on behalf of Mr. Tryon. Is that accurate? That is accurate, Your Honor. That's problematic for Mr. Tryon, isn't it? I believe that we saw that the opposite way, Your Honor. This shows that Tryon, in the initial post-conviction proceeding, there were affidavits presented from other defenders within the Oklahoma County Public Defender's Office that this was a strategic, systematic problem that they had. They were not able to get internal funding. There were issues with being discharged from seeking the funding from the trial court. I don't believe that's evidence that they strategically decided we're not going to ask for funding for something that could corroborate our experts' testimony. Whatever issues they're having with the internal funding, you have the trial judge saying, look, do what you need to do, but if you can't get it, come back to me. I need you to do it by this date. And nothing happens. And I believe this shows a lack of strategy. Whether the trial judge has said that or not, counsel is supposed to be aware of their obligations, so it's not as though that was what gave them permission to ask the trial court for funding. They, nonetheless, should have done that and failed to do so. Are you saying that there were affidavits that indicate that counsel would have been discouraged by the Oklahoma County Public Defender to seek court funding? Is that what you're saying? That is what the affidavit said, Your Honor. Correct. All right. Thank you, counsel, for the fine argument. Case is submitted. Court is in recess.